UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOROTHEA EMMONS and LISA STAPELTON, | Case No. 1:13-cv-0474 AWI-BAM |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFFS' MOTION TO REMAND |
| v. | |
| QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., et al., | (Doc. 7) |
| Defendants. | |

Pending before the Court is Plaintiffs Dorothea Emmons and Lisa Stapelton's ("Plaintiffs") Motion to Remand for Lack of Subject Matter Jurisdiction. (Doc. 7). Plaintiffs argue that Defendants Quest Diagnostic Clinical Laboratories, Inc., Quest Diagnostics Incorporated, and Quest Diagnostics Nichols Institute (collectively "Defendants" or "Quest") have failed to meet their burden of proving that the amount in controversy in this case exceeds $5 million. Defendants filed an opposition (Doc. 9) on May 24, 2013, and Plaintiffs filed a reply on May 31, 2013 (Doc. 10). The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing

1

scheduled for June 21, 2013.[1]  For the following reasons, Plaintiffs' Motion to Remand should be GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

The Complaint alleges that Defendant Quest Diagnostics is the "world's leading provider of diagnostic testing," "including blood testing, gene-based and molecular testing, and testing for diseases and cancer." Pl.'s Complaint ("Compl."), Doc. 1, at ¶ 6.  Defendants employed Plaintiff Dorothea Emmons as a Phlebotomist, trained and certified to draw blood for diagnostic testing, for approximately five years and eight months ending in August 2011.  Compl. at ¶ 28.  Plaintiff Lisa Stapelton was employed as a Floater Phlebotomist, also certified to draw blood, in various locations in and around Haywood, California from November 2001 to June 2012.  *Id.* at ¶ 29.

On February 23, 2013, this class action was filed on behalf of Plaintiffs and others similarly situated in the Stanislaus County Superior Court.  Plaintiffs allege nine causes of action including: (1) unpaid overtime wages, in violation of Cal. Lab. Code §§ 510 and 1198; (2) unpaid minimum wages, in violation of Cal. Lab. Code §§ 1194, 1197, and 1197.1; (3) unpaid meal period premiums, in violation of Cal. Lab. Code §§ 226.7 and 512(a); (4) unpaid rest period premiums, in violation of Cal. Lab. Code § 226.7; (5) wages not timely paid upon termination, in violation of Cal. Lab. Code §§ 201 and 202; (6) non-compliant wage statements, in violation of Cal. Lab. Code § 226(a); (7) unpaid business related expenses, in violation of Cal. Lab. Code § 2800, 2802; (8) civil penalties under California Labor Code sections 2698, et seq ("PAGA"); and (9) violations of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

Plaintiffs define three classes of similarly situated persons.  First, Plaintiffs purport to represent the "Class" defined as "all person who worked as non-Floater Phlebotomists for Defendants in California, within four years prior to the filing of this complaint until the date of certification." *Id.* at ¶ 19.  Second, Plaintiffs purport to represent a subclass of persons referred to as the "Floater Sub-Class" defined as "all persons who worked as Floater Phlebotomists for Defendants in California, from June 3, 2011 until the date of certification." *Id.* at ¶ 20.  Finally, Plaintiffs also represent another subclass

---

[1] The Court credited the detailed and well-argued briefing in support of its decision to vacate the hearing.  (Doc. 13).

of persons referred to as the "One Year Subclass" consisting of "all persons who worked as non-Floater Phlebotomists or Floater Phlebotomists for Defendants in California, within one year prior to the filing of this complaint until the date of certification." *Id.* at ¶ 21.

The Complaint further alleges that Plaintiffs and class members: (i) did not receive proper overtime compensation; (ii) did not receive proper minimum wages for off-the-clock work; (iii) did not receive required meal periods or proper compensation in lieu thereof; (iv) did not receive required rest periods or proper compensation in lieu thereof; (v) were not provided with complete and accurate wage statements; and (vi) did not timely receive all payments of wages, both during employment and upon termination. *Id.* at ¶¶ 26-49. In addition, the Complaint alleges that "the aggregate amount in controversy for the proposed class action, including monetary damages, restitution, penalties, injunctive relief, and attorneys' fees, is less than five million dollars ($5,000,000), exclusive of interest and costs." *Id.* ¶ 1. The Complaint further alleges that "Plaintiffs reserve the right to seek a larger amount based upon new and different information resulting from investigation and discovery." *Id.*

On April 1, 2013, Defendants filed a Notice of Removal, alleging that the amount in controversy exceeds $5,000,000, and that this Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Supporting removal, Defendants attached the declaration of Megan Bassler, the Senior Human Resources Generalist for Quest Diagnostics, Incorporated, in support of their arguments as to the jurisdictional amount. Declaration of Megan Bassler ("Bassler Decl."), Doc. 1-1.  Her declaration states that: (i) at least 2,000 employees worked in California as non-Floater Phlebotomists for Defendants during the four year period preceding the complaint; (ii) 785 of those employees are former employees; (iii) at least 180 employees worked in California as Floater Phlebotomists; and (iv) 30 of those employees are former employees. *Id.* at 4-5. Based on this information, Defendants indicate that the entire alleged class (including subclasses) consists of at least 2,180 individuals.  (Notice of Removal; Doc. 1 at 5).

Plaintiffs move to remand this action on the grounds that Defendants have failed to meet their burden of establishing that the total amount in controversy exceeds $5,000,000.

**REMOVAL STANDARD**

A motion to remand is the proper procedure for challenging removal. *See N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1038 (9th Cir.1995). The removal statute is strictly construed, and any doubt about the right of removal is resolved in favor of remand. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Prize Frize, Inc. v. Matrix, Inc.*, 167 F.3d 1261, 1265 (9th Cir.1999). Consequently, if a Plaintiff challenges the Defendant's removal of a case, the defendant bears the burden of establishing the propriety of the removal. *See Gaus*, 980 F.2d at 566; *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (citations and quotations omitted) ("Because of the Congressional purpose to restrict the jurisdiction of the federal courts on removal, the statute is strictly construed, and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

"A civil action in state court may be removed to federal district court if the district court has 'original jurisdiction' over the matter." *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007). Under CAFA, a federal district court has subject matter jurisdiction over a class action in which: (1) there are 100 or more proposed class members; (2) at least some of the members of the proposed class have a different citizenship from the defendant; and (3) the aggregated claims of the proposed class members exceed the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d). "[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Lowdermilk*, 479 F.3d at 997 (quoting *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir.2006) (per curiam)).

Here, Plaintiffs' motion for remand is based solely upon their assertion that Defendants have not met their burden of proof to establish that the case meets the amount in controversy requirement under CAFA. No dispute is raised regarding diversity of citizenship or numerosity of the proposed class.

**DISCUSSION**

**A.    Appropriate Standard of Proof Required of Removing Defendant**

The parties dispute the legal standard of proof that governs the amount in controversy determination. Plaintiffs argue Quest must establish the amount in controversy exceeds $5 million to a

4

1 legal certainty; Defendants counter the preponderance-of-the-evidence standard applies because the circumstances indicate that the allegations regarding the amount in controversy were made in bad faith. (Doc. 9 at 8).

In *Lowdermilk*, the Ninth Circuit concluded that when a plaintiff alleges that the amount in controversy is less than the jurisdictional minimum of $5 million required by the CAFA, the defendant must show with "legal certainty" that more than $5 million is in controversy, unless plaintiff has pled in bad faith. *Lowdermilk*, 479 F.3d at 999. However, if a plaintiff's "complaint is unclear [regarding] 'a total amount in controversy,' the proper burden of proof . . . is proof by a preponderance of the evidence." G*uglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007).

Applying *Lowdermilk*, the Court must first assess whether Plaintiffs' amount in controversy pleading was specific in order to determine the appropriate standard of review. The Court "reserve[s] the preponderance of evidence standard for situations where a plaintiff 'seeks no specific amount in damages,' . . . and a court is forced to look beyond the complaint to determine whether the suit meets the jurisdictional requirements." *See Lowdermilk*, 479 F.3d 994 at 998. In contrast, when a plaintiff pleads a "specific amount" of damages by alleging, *e.g.*, that damages amount to "less than five million dollars," a defendant must meet the higher standard of establishing, by a legal certainty, that the actual amount of damages would be more than the $5 million jurisdictional threshold. *See Id.* at 998.

Here, Plaintiffs allege that they are seeking less than the jurisdictional maximum, including attorney's fees, throughout their complaint filed in state court.[2] *See Id.* at 999. Thus, the Court finds that Plaintiff has specifically alleged the amount in controversy, and that Defendants must therefore prove the jurisdictional amount in controversy to a legal certainty, absent proof of bad faith. *See id.*

Defendants contend that the preponderance of evidence standard still applies because Plaintiffs plead the amount in controversy in bad faith for two reasons. First, relying on *Butterworth v. American*

---

[2] Plaintiffs repeat their jurisdictional allegations—inclusive of attorney's fees—in their prayer for relief. *Cf. Guglielmino v. McKee*, 506 F.3d 696, 701 (9th Cir. 2007) (suggesting that plaintiff failed to allege a sufficiently specific total amount in controversy under *Lowdermilk* because, while plaintiff alleged that recovery was less than $5 million, the allegation was not repeated in the Prayer for Relief and did not include a request for attorneys' fees).

5

*Eagle Outfitters, Inc.*, Defendants argue that Plaintiffs failed to support their allegation that the amount in controversy is less than $5,000,000.00 despite the large class size, relatively high rate of pay ($17.00 per hour on average) and the nine causes of action pled. 2011 U.S. Dist. LEXIS 119192, * 9 (E.D. Cal. Oct. 14, 2011); (Doc. 9 at 8).  In *Butterworth*, a plaintiff representing 14,314 individuals alleged the amount in controversy was less than $5,000,000. Magistrate Judge Dennis L. Beck found bad faith because the plaintiff "made no effort to support his allegations" and "rest[ed] on his desire to be in state court." 2011 U.S. Dist. LEXIS 119192, at *10.

Defendants' reliance on *Butterworth* is misplaced.  As the Court pointed out in *Negrete v. Petsmart*, while the district court affirmed Judge Beck's ruling, Judge Lawrence O'Neil did so without affirming the magistrate judge's finding of bad faith. *See Negrete v. PetSmart, Inc.,* 2013 U.S. Dist. LEXIS 31871, *10-12 (E.D. Cal. Mar. 7, 2013) (*citing Butterworth*, 2011 U.S. Dist. LEXIS 132816, *7).  The *Negrete* Court stated that "the magistrate judge in *Butterworth* ignored controlling Ninth Circuit precedent on the issue." *Id.* at *12.  Contrary to the Court's ruling in *Butterworth*, Ninth Circuit precedent concludes that pleading damages of $5,000,000.00 is sufficiently specific and does not amount to bad faith.

Second, Defendants argue that Plaintiffs' reservation of the right to seek larger damages at a later date also evidences Plaintiffs' bad faith. This identical argument has been widely rejected throughout the Ninth Circuit. *See Id.* at *13-14 (finding that Plaintiff's reservation of rights does not amount to bad faith); *Velasquez v. HMS Host USA Inc*., No. 2:12-cv-02312-MCE-CKD, 2012 U.S. Dist. LEXIS 172801, *19 (E.D. Cal. Dec. 5, 2012)(same).

Moreover, the plaintiffs reserving the right to amend does not prejudice Defendants and is not bad faith.  In *Jones*, the Court noted that ordinarily, the right to remove based on an amended complaint is limited to the first year after an action is filed. *Jones v. ADT Security Services, Inc.*, No. CV 11-7750 PSG (JCGx), 2012 U.S. Dist. LEXIS 558, *6-8 (C.D. Cal. Jan 3, 2012) ("[A] case may not be removed on the basis of [diversity jurisdiction] more than 1 year after commencement of the action."). However, this limitation does not apply to cases removable under CAFA.  28 U.S.C. § 1453(b) (providing that the one year limitation under § 1446(b) does not apply to class actions).  This exception protects a Defendant from the possibility that a Plaintiff could plead below the jurisdictional

6

threshold now, wait out Defendant's right to remove, and then amend to allege a larger amount in controversy. *Id.* at *7. As reasoned in *Jones*, Plaintiffs are at liberty to plead conservatively to secure a state forum and still reserve their rights for a larger damage award, with little consequence to Defendants. *Id.* Thus, Plaintiffs "reservation of right does not create an uncertainty about the amount in controversy; it does no more than state a right that Plaintiffs already possess." *See Velasquez*, 2012 U.S. Dist. LEXIS 172801 at *20. The Court finds Plaintiffs' allegations regarding the amount in controversy do not amount to bad faith. Accordingly, the legal certainty standard applies.

## B.     Legal Certainty Standard

Defendants contend that even under the legal certainty standard, federal jurisdiction still applies. (Doc. 9 at 13). Though the standard for "legal certainty" is difficult to define, at the very least, it requires defendant to provide enough "concrete evidence . . . to estimate" that the actual amount controversy is over $5 million. *See Lowdermilk*, 479 F.3d at 1000. While the standard does not require defendant to prove the plaintiff's case, the defendant must produce enough evidence to allow a court "to estimate with . . . certainty the actual amount in controversy." *Id.* at 1001. Hence, mere reliance on the plaintiff's pleadings or unsupported affidavits, without more, is insufficient to demonstrate the amount in controversy. *See Cifuentes v. Red Robin Int'l, Inc.,* 2012 U.S. Dist. LEXIS 27211, *4 (N.D. Cal. Mar. 1, 2012) (holding that defendant may not meet its burden to show with "legal certainty" that the amount in controversy in this case exceeds the $5 million minimum by merely taking as true the allegations in the complaint). A court "cannot base [its] jurisdiction on a [d]efendant's speculation and conjecture." *Lowdermilk*, 479 F.3d at 1002. It is therefore "a high bar for the party seeking removal, but it is not insurmountable." *Id.* A defendant must set forth the specific underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum. *Gaus*, 980 F.2d at 56 (pre-CAFA case holding that defendant's unsupported allegation that amount in controversy exceeded $50,000 did not overcome strong presumption against removal jurisdiction).

## C.     AMOUNT IN CONTROVERSY

7

Defendants contend that they have shown to a legal certainty that the amount in controversy in this case is at least $8,625,000. (Notice of Removal at 7). In addition, the jurisdictional amount is certain to be met, because Defendants' computations rely on only two of Plaintiffs' nine asserted claims, and do not include attorneys' fees. (Doc. 9 at 7). Plaintiffs argue Defendants fail to meet their burden because Defendants' notice of removal is based entirely on assumptions and "speculative, evidence-free calculations." (Doc. 10 at 6). The Court discusses each of Defendants' calculations below.

**1. Inaccurate Wage Statement Violations**

Plaintiffs' sixth cause of action alleges Defendants "intentionally and willfully" failed to provide employees with accurate wage statements in accord with Labor Code § 226(a). Compl. ¶¶ 88-89. These allegations are largely predicated on Defendants' failure to pay employees for all hours worked. Compl. ¶ 88. California Labor Code § 226(e) provides that where an employer has knowingly and intentionally failed to provide an accurate wage statement, the employee:

> is entitled to recover the greater of all actual damages [suffered because of the employer's failure] or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Defendants calculate the value of this claim as $5,565,000.00. Defendants support their calculations with the declaration of Megan Bassler. (Doc. 9-1). Bassler declares that Defendants issued at least 2,100 paychecks in the one-year preceding the complaint. Bassler Decl. ¶ 3. In calculating the value of the inaccurate wage statement claim, Defendants assume that every wage statement issued over twenty-six pay periods was incorrect. Based on that assumption, Plaintiffs are entitled to recover $50 for the initial incorrect wage statement and $100 for every additional erroneous wage statement; meaning each employee would be entitled to receive $2,650 in statutory compensation, at a minimum. Thus, 2,100 pay checks x $2,650 in statutory damages for a year = $5,565,000.00.[3]

---

[3] Calculated another way, (at least 2,100 paychecks x $50 first time violation) + (at least 2,100 paychecks x 100 subsequent violation rate x 26 subsequent pay periods) = $5,565,000.00

8

1   Defendants' calculations provide only assumptions and conjecture without proper evidentiary
2   support. Here, Defendants merely speculate that each class member received an improper wage
3   statement every pay period throughout the year. A declaration stating the number of pay checks
4   issued during the years prior to this action, together with assumptions as to erroneous payments for
5   each and every employee, is not sufficient to establish that the amount in controversy in this case
6   exceeds $5,000,000 to a legal certainty. *See, e.g., Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1127
7   (C.D. Cal. 2010) ("When applying the preponderance of the evidence standard to California Labor
8   Code claims, many California district courts have refused to credit damage calculations based on
9   variables not clearly suggested by the complaint or supported by evidence, concluding that the
10  calculations are mere conjecture.").

   Further, there are no allegations in the Complaint to support this assumption. In support of
   their calculations, Defendants rely on *Jasso v. Money Market Express, Inc*., No, 11-5500, 2012 U.S.
   Dist. LEXIS 27215, 2012 WL 699465, at *5-6 (N. D. Cal. Mar. 1, 2012) for the proposition that
   "Defendants may base [their] amount in controversy calculations in wage and hour cases on evidence
   of the number of paychecks under the legal certainty standard." (Doc. 9 at 12). The *Jasso* court found
   that Defendants paycheck evidence was supported, not because Defendants submitted an exact number
   of paychecks, but because the assumptions underlying Defendant's calculations were supported by
   Plaintiff's allegations in the Complaint. The *Jasso* court held, where a plaintiff alleges a consistent
   policy or practice of failure to pay all wages due, it is reasonable, for purposes of determining the
   amount in controversy to a legal certainty, to assume that at least one violation occurred per putative
   class member per week. *Id.* at *19. The same court later limited its holding to the specific allegations
   there; namely, where the plaintiff alleged a "uniform policy and scheme" and that the violations took
   place "at all material times." *See Morris v. LiquidAgents Health Care*, LLC, No. 12-4220, 2012 U.S.
   Dist. LEXIS 159992, 2012 WL 5451163 at *5 (N. D. Cal. Nov. 7, 2012) (distinguishing *Jasso*).
   Defendants similarly here cannot assume consistent or regular wage statement violations without
   identifying specific supporting allegations in the Complaint.

   The absence of concrete evidence coupled with the lack of supporting language in Plaintiffs'
   Complaint leaves the Court to speculate about the amount in controversy. *See Lowdermilk*, 479 F.3d

9

at 1002 (a court cannot base its jurisdiction on speculation and conjecture).  As a result, Defendants' assumptions here are unwarranted and cannot be relied upon to prove CAFA jurisdiction.

### 2. Wages Due at Termination

Plaintiffs' fifth cause of action alleges that Defendants willfully failed to pay members of the proposed class—who were previously employed by Defendants but who quit or were terminated—all wages due within 72 hours of their separation.  Compl., ¶ 82.  Under Section 203 of the California Labor Code, such a violation results in a penalty of one full day's wages for each day that the unpaid wages remain outstanding, with a limit of 30 days.  *See* CAL. LAB. CODE § 203 ("If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

Relying on Ms. Bassler's declaration, which states that 815 putative class members have separated from employment with Defendants during the statutory period, Defendants calculate that the amount in controversy for this claim is $3,325,200.00.[4]  Defendants reach this amount by assuming that the maximum penalty of eight hours per day for thirty days applies to Plaintiffs' case. (Doc. 9 at 15).  Furthermore, Defendants' calculations assume that every employee who ceased employment was 1) owed unpaid wages at the time of separation and 2) did not receive the unpaid wages within thirty days of separation.[5]  *See Roth*, 799 F.Supp.2d at 1125-26 ("The court agrees that Roth's allegations suggest all class members were denied some form of proper compensation during their employment, and that the underpayment was not corrected at the end of their employment. Thus, defendants can properly assume that all employees were entitled to maximum waiting time penalties under Labor Code § 203").

---

[4]  (815 former employees x 8 hours x 30 days x $17.00 average wage).
[5]  Defendants do allege that since the complaint was filed—over 90 days ago—Defendants have not made any payments to any former employees for alleged unpaid work.  (Doc. 9 at 14).

10

1  Even if the Court could reasonably infer that each class member suffered some form of Labor
2  Code violation at some point during his or her employment, and was thus entitled to waiting time
3  penalties, the Court is unwilling to infer a maximum penalty for each plaintiff.  Defendants'
4  assumption that each employee is entitled to recover the full thirty-day maximum penalty has no basis
5  in the allegations of the Complaint or the proof submitted by Defendants.  Defendants' fail to point to
6  any allegations in the Complaint that class members are entitled to wages for the maximum of 30 days.
7  Plaintiffs' complaint alleges that class members may be entitled to penalties for "up to" the thirty day
8  maximum, not that each class member is entitled to the maximum penalty for all thirty days. The
9  Court in *Hernandez* found that a Plaintiff's use of the qualifying phrase "up to," acknowledges that not
10 all class members may be entitled to recover the maximum penalty.  *See Hernandez v. Towne Park,*
11 *Ltd.*, 2012 U.S. Dist. LEXIS 86975, *12 (C.D. Cal. June 22, 2012).  In *Hernandez*, the plaintiff alleged
12 "regularly" occurring Labor Code violations without alleging the frequency of those violations.  *Id.* at
13 *22. After analyzing the complaint and the applicable law, the Court concluded that the removing
14 defendant could not rely on "assumptions that have no evidentiary basis." *Id.* at *24.  Thus, even
15 though the *Hernandez* defendants estimated a class size of 1,902—similar to Defendants' estimate of
16 2,100-member class here—they could not meet the legal certainty standard. *Id.* at *69.

17  Other Courts have followed this approach.  *Compare, Longmire v. HMS Host USA, Inc.*, No.
18 12-cv-2203-AJB, 2012 U.S. Dist. LEXIS 167463, *21-22 (S.D. Cal. Nov. 26, 2012) (following
19 *Hernandez* in rejecting speculative violation rates for allegations of Labor Code violations); *Vigil v.*
20 *HMS Host USA, Inc.*, 2012 U.S. Dist. LEXIS 112928 (N.D. Cal. Aug. 10, 2012), *15-16 (same) *with*
21 *Altamirano v. Shaw Indus.*, 2013 U.S. Dist. LEXIS 84236 (N.D. Cal. June 14, 2013)

22  In *Altamirano,* a recent decision decided after the close of the instant briefing period, the
23 Northern District found that it was reasonable to assume that each class member leaving employment
24 would have experienced at least one incident resulting in underpayment during the course of
25 employment where Plaintiff alleged Defendants engaged in illegal time shaving or rounding practices.

26  *Altamirano* is distinguishable from the instant case for two reasons.  First, *Altamirano* applied
27 the preponderance of the evidence standard and not the more rigorous legal certainty standard because
28 there, Plaintiff's amended complaint was silent on the amount of damages.   Here, Plaintiffs

11

specifically plead an amount of damages less than the jurisdictional amount, and thus the legal certainty standard applies. Courts applying the legal certainty standard have found that assumptions of maximum violation rates are unduly speculative. *See Campbell v. Vitran Express, Inc.,* No. CV-10-04442-RGK(SHx), 2010 U.S. Dist. LEXIS 132071, at *10 (C.D. Cal. Aug. 16, 2010*); Riddoch v. McCormick & Schmicks Seafood Rests., Inc.,* No. CV 09-7127 ODW (MANx), 2010 U.S. Dist. LEXIS 65799, at *9-10 (C.D. Cal. June 28, 2010).

Second, in *Altamirano*, Defendants provided concrete evidence of time shaving. In ruling on the motion to remand, the Court requested supplemental briefing estimating the amount in controversy during the relevant time period. *Id.* at *6. After finding that Defendants' calculations were supported by concrete evidence, the Court stated that Plaintiffs alleged time shaving policy applied to all putative class members, and given that the penalties would attach even if there were only one minor violation during a given pay period, the 100% violation rate was not unreasonable.

Here, Defendants allegations are not accompanied with concrete evidence establishing that the maximum penalty should apply to each class member. In fact, in the vast majority of employment cases where the defendant failed to proffer concrete evidence supporting its estimates, district courts have declined to rely on defendant's unsupported calculations. As Defendants' argument here is virtually identical to these other cases, it is likewise denied.

### 3. Civil Penalties ("PAGA")

Plaintiffs seek to recover penalties under The Private Attorneys General Act of 2004 ("PAGA"). CAL. LAB. CODE § 2699. Pursuant to PAGA, an "aggrieved employee" may bring a civil action personally and on behalf of other current, or former, employees to recover civil penalties for violations of the California Labor Code. CAL. LAB. CODE § 2699(a). PAGA defines an "aggrieved employee" as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." *Id.* § 2699(c). Seventy-five percent of the civil penalties recovered go to the Labor and Workforce Development Agency, leaving the remaining twenty-five percent for the "aggrieved employees." *Id.* § 2699(i). PAGA penalties are $100 for each initial violation and $200 for each subsequent violation. CAL. LAB. CODE § 2699(f)(2). Defendants issued approximately 2,100 paychecks during the period covered by PAGA. Defendants assume that there

1 was one PAGA violation present for each employee during each pay period. Thus, Defendants 2 calculated the PAGA penalties as follows: ($100 initial violation penalty x 2,100 paychecks) + ($200 3 subsequent violation penalty x 25 remaining pay periods x 2,100 paychecks per pay period) = 4 $10,710,000.

With regard to the PAGA penalties, Defendants calculations suffer the same fate as seen above. Defendants again put forth no evidence in support of their assertion that each putative class member is entitled to full PAGA penalties. Therefore, Defendants have failed to show this amount in controversy with legal certainty and cannot use this amount to reach the $5,000,000 jurisdictional threshold either. *See Negrete,* 2013 U.S. Dist. LEXIS 31871, at *25 (E.D. Cal. Mar. 6, 2013) (declining to count PAGA penalties toward the amount in controversy where the defendants did not offer "evidence to support their assertion that each putative class member is entitled to maximum penalties under PAGA").

**CONCLUSION**

In sum, Defendants failed to prove to a legal certainty that the amount in controversy exceeds $5,000,000. As a result, CAFA does not provide a proper basis for subject matter jurisdiction. Accordingly, the Court RECOMMENDS that Plaintiff's Motion to Remand should be GRANTED and that this action be REMANDED to the Stanislaus County Superior Court of California for all further proceedings.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304. Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district

/////
/////
/////
//////
/////

judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **June 27, 2013**          /s/ *Barbara A. McAuliffe*
                                    UNITED STATES MAGISTRATE JUDGE