UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOROTHEA EMMONS and LISA STAPELTON,<br><br>           Plaintiffs,<br><br>     v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., *et al.*,<br><br>           Defendants.<br>_____/ | Case No. 1:13-cv-0474 AWI-BAM<br><br>FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFFS' MOTION TO REMAND<br><br>(Doc. 7) |

      Before the Court is a Motion to Remand filed by Plaintiffs Dorothea Emmons and Lisa Stapelton ("Plaintiffs"). Plaintiffs initially filed suit individually and on behalf of others similarly situated against Defendants Quest Diagnostic Clinical Laboratories, Inc., Quest Diagnostics Incorporated, and Quest Diagnostics Nichols Institute (collectively "Defendants" or "Quest"), in the Stanislaus County Superior Court. (Doc. 1). Defendants filed a Notice of Removal asserting this Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"). Plaintiffs filed the instant motion to remand for lack of subject matter jurisdiction on the ground that Defendants failed to demonstrate with "legal certainty" that the amount in controversy exceeds $5,000,000. (Doc. 7). On June 27, 2013, the Court issued Findings and Recommendations granting Plaintiffs' motion and recommending that this action be remanded to the Stanislaus County Superior Court. *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13-cv-474, 2013 U.S. Dist. LEXIS 158500 (E.D. Cal.

2013). In reaching its decision, the Court found that Defendants failed to satisfy the "legal certainty" standard of proof set forth in *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007). (Doc. 14).

Defendants filed objections to the Findings and Recommendations and later filed a notice of new authority indicating that significant changes in the Ninth Circuit case law warranted reconsideration of the Court's Findings and Recommendations. (Doc. 21). Defendants pointed to the recent Ninth Circuit decision in *Rodriguez v. AT&T Mobility Services, LLC*, 728 F.3d 975 (9th Cir. 2013) which overruled *Lowdermilk's* legal certainty standard. On November 11, 2013, this Court vacated its Findings and Recommendations and granted the parties an opportunity to file supplemental briefing. (Doc. 27). On November 20, 2013, the parties filed supplemental briefing addressing the import of *Rodriguez* and disputing whether Defendants met the applicable standard of proof. (Docs. 28, 29).

Having considered the parties' papers, relevant legal authority, and the record in this case, the Court again RECOMMENDS that Plaintiffs' Motion to Remand should be GRANTED.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Complaint alleges that Defendant Quest Diagnostics is the "world's leading provider of diagnostic testing," "including blood testing, gene-based and molecular testing, and testing for diseases and cancer." Pl.'s Complaint ("Compl."), Doc. 1, at ¶ 6. Defendants employed Plaintiff Dorothea Emmons as a Phlebotomist, trained and certified to draw blood for diagnostic testing, for approximately five years and eight months ending in August 2011. Compl. at ¶ 28. Plaintiff Lisa Stapelton was employed as a Floater Phlebotomist, also certified to draw blood, in various locations in and around Haywood, California from November 2001 to June 2012. *Id.* at ¶ 29.

On February 23, 2013, this class action was filed on behalf of Plaintiffs and others similarly situated in the Stanislaus County Superior Court. Plaintiffs allege nine causes of action including: (1) unpaid overtime wages, in violation of Cal. Lab. Code §§ 510 and 1198; (2) unpaid minimum wages, in violation of Cal. Lab. Code §§ 1194, 1197, and 1197.1; (3) unpaid meal period premiums, in violation of Cal. Lab. Code §§ 226.7 and 512(a); (4) unpaid rest period premiums, in violation of Cal. Lab. Code § 226.7; (5) wages not timely paid upon termination, in violation of Cal. Lab. Code §§ 201

1 and 202; (6) non-compliant wage statements, in violation of Cal. Lab. Code § 226(a); (7) unpaid business related expenses, in violation of Cal. Lab. Code § 2800, 2802; (8) civil penalties under California Labor Code sections 2698, et seq ("PAGA"); and (9) violations of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

Plaintiffs define three classes of similarly situated persons. First, Plaintiffs purport to represent the "Class" defined as "all person who worked as non-Floater Phlebotomists for Defendants in California, within four years prior to the filing of this complaint until the date of certification." *Id.* at ¶ 19. Second, Plaintiffs purport to represent a subclass of persons referred to as the "Floater Sub-Class" defined as "all persons who worked as Floater Phlebotomists for Defendants in California, from June 3, 2011 until the date of certification." *Id.* at ¶ 20. Finally, Plaintiffs also represent another subclass of persons referred to as the "One Year Subclass" consisting of "all persons who worked as non-Floater Phlebotomists or Floater Phlebotomists for Defendants in California, within one year prior to the filing of this complaint until the date of certification." *Id.* at ¶ 21.

The Complaint further alleges that Plaintiffs and class members: (i) did not receive proper overtime compensation; (ii) did not receive proper minimum wages for off-the-clock work; (iii) did not receive required meal periods or proper compensation in lieu thereof; (iv) did not receive required rest periods or proper compensation in lieu thereof; (v) were not provided with complete and accurate wage statements; and (vi) did not timely receive all payments of wages, both during employment and upon termination. *Id.* at ¶¶ 26-49. In addition, the Complaint alleges that "the aggregate amount in controversy for the proposed class action, including monetary damages, restitution, penalties, injunctive relief, and attorneys' fees, is less than five million dollars ($5,000,000), exclusive of interest and costs." *Id.* ¶ 1. The Complaint further alleges that "Plaintiffs reserve the right to seek a larger amount based upon new and different information resulting from investigation and discovery." *Id.*

On April 1, 2013, Defendants filed a Notice of Removal, alleging that the amount in controversy exceeds $5,000,000, and that this Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Supporting removal, Defendants attached the declaration of Megan Bassler, the Senior Human Resources Generalist for Quest Diagnostics, Incorporated, in support of their arguments as to the jurisdictional amount. Declaration of Megan

1  Bassler ("Bassler Decl."), Doc. 1-1.  Her declaration states that: (i) at least 2,000 employees worked in
2  California as non-Floater Phlebotomists for Defendants during the four year period preceding the
3  complaint; (ii) 785 of those employees are former employees; (iii) at least 180 employees worked in
4  California as Floater Phlebotomists; and (iv) 30 of those employees are former employees.  *Id.* at 4-5.
5  Based on this information, Defendants indicate that the entire alleged class (including subclasses)
6  consists of at least 2,180 individuals.  (Notice of Removal; Doc. 1 at 5).

   Plaintiffs move to remand this action on the grounds that Defendants have failed to meet their
8  burden of establishing that the total amount in controversy exceeds $5,000,000.

## REMOVAL STANDARD

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983) (citation omitted); *see also* 28 U.S.C. § 1441. However, federal courts are courts of limited jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, the burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal, and the removal statute is construed strictly against removal jurisdiction. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566.

CAFA provides that district courts have original jurisdiction over any class action in which (1) the amount in controversy exceeds five million dollars, (2) any plaintiff class member is a citizen of a state different from any defendant, (3) the primary defendants are not states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief, and (4) the number of plaintiffs in the class is at least 100. 28 U.S.C. §§ 1332(d)(2), (d)(5). "[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. The Dow Chemical Co*., 443 F.3d 676, 685 (9th Cir. 2006).  Thus, Defendants bear the burden to establish that this Court has jurisdiction over Plaintiffs' claims. *Id.* In order to determine whether the removing party has met its burden, a court may consider the contents

of the removal petition and "summary-judgment-type evidence." *Valdez*, 372 F.3d at 1117. Here, Plaintiffs' motion for remand is based solely upon their assertion that Defendants have not met their burden of proof to establish that the case meets the amount in controversy requirement under CAFA. No dispute is raised regarding diversity of citizenship or numerosity of the proposed class.

## DISCUSSION

### A.     The Preponderance of the Evidence Standard Applies

Where a state court complaint does not specify an amount of damages to show federal jurisdiction, the removing defendant bears the burden of establishing the jurisdictional amount in controversy by a preponderance of the evidence. *See Rodriguez,* 728 F.3d at 976. ("A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum."); *see also Sanchez v. Monumental Life*, 102 F.3d 398, 404-06 (9th Cir. 1996) (holding that when the face of the complaint does not specify the amount in controversy "the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional amount]."

In *Lowdermilk,* the Ninth Circuit adopted "legal certainty" as the standard of proof in CAFA cases where a state court complaint affirmatively alleges that the amount in controversy is less than CAFA's jurisdictional minimum. *Lowdermilk*, 479 F.3d at 999. As Defendants argue, shortly after this Court issued its Findings and Recommendations, the Ninth Circuit in *Rodriguez* found the Supreme Court overruled *Lowdermilk* in *Standard Fire Insurance Company v. Knowles*,    U.S.    , 133 S.Ct. 1345, 185 L. Ed. 2d 439 (2013). The Ninth Circuit explained:

> *Lowdermilk* held that district courts "need not look beyond the four corners of the complaint to determine whether the CAFA jurisdictional amount is met" so long as a plaintiff avers damages below $5 million. *Id.* at 998. Under *Standard Fire*, the district court's inquiry is not so narrow. *Standard Fire* instructed district courts to look to the potential claims of the absent class members, rather than plaintiff's complaint, holding that section 1332(d) so requires: "[t]he statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class." 133 S.Ct. at 1348.

*Rodriguez*, 728 F.3d at 981. The Ninth Circuit observed: "*Lowdermilk* reasoned that the initial jurisdictional determination derives from the complaint, while *Standard Fire* mandates that courts

determine their jurisdiction by aggregating all potential class members' individual claims." 2013 U.S. App. LEXIS 17851, [WL] at *6 (*citing Standard Fire*, 133 S.Ct at 1350).

The Ninth Circuit held "the proper burden of proof imposed upon a defendant to establish the amount in controversy requirement is the preponderance of the evidence standard." *Rodriguez*, 728 F.3d at 977. This standard requires a defendant to "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the jurisdictional threshold]." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204 (E.D. Cal. 2008) (quoting *Sanchez*, 102 F.3d at 404). Thus, Defendants have the burden to demonstrate by a preponderance of the evidence that the amount of damages in controversy exceeds $5,000,000.

**B.  Defendants Have Not Met Their Burden to Show That the Amount in Controversy Exceeds $5,000,000.**

At issue is whether Defendants have shown by a preponderance of the evidence that the value of Plaintiffs' claims exceeds $5,000,000. In their notice of removal, Defendants argue that the amount in controversy exceeds $8,625,000 based on three of the nine allegations of violations of the California Labor Code.  (Notice of Removal at 7).[1]  Plaintiffs argue Defendants fail to meet their burden because Defendants' notice of removal is based entirely on assumptions and "speculative, evidence-free calculations." (Doc. 10 at 6).  The Court discusses Defendants' calculations below.

**1.  California Labor Code § 226 Claim (Inaccurate Wage Statement Violations)**

Plaintiffs' sixth cause of action alleges Defendants "intentionally and willfully" failed to provide employees with accurate wage statements in accord with Labor Code § 226(a).  Compl. ¶¶ 88-89.  These allegations are largely predicated on Defendants' failure to pay employees for all hours worked.  Compl. ¶ 88.  California Labor Code § 226(e) provides that where an employer has knowingly and intentionally failed to provide an accurate wage statement, the employee:

> is entitled to recover the greater of all actual damages [suffered because of the employer's failure] or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent

---

[1]  Although Plaintiffs' Complaint contains other claims, the Notice of Removal contains no damages calculations for those other claims. Nor have Defendants attempted to quantify the amount of attorneys' fees Plaintiff might collect if successful. Defendants failed to submit evidence supporting the amount in controversy on any other claims and as a result, the Court will not consider those claims in evaluating whether the $5,000,000 threshold is met.

6

pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Defendants calculate the value of this claim as $5,565,000.00. (Doc. 29). Defendants support their calculations with the declaration of Megan Bassler. (Doc. 9-1). Bassler declares that Defendants issued at least 2,100 paychecks in the one-year preceding the complaint. Bassler Decl. ¶ 3. In calculating the value of the inaccurate wage statement claim, Defendants assume, without evidentiary support, that every wage statement issued over twenty-six pay periods was incorrect. Based on that assumption, Defendants argue Plaintiffs are entitled to recover $50 for the initial incorrect wage statement and $100 for every additional erroneous wage statement; and therefore, each employee would be entitled to receive $2,650 in statutory compensation, at a minimum. Thus, 2,100 pay checks x $2,650 in statutory damages for a year equals $5,565,000.00, the statutory maximum based on the proposed class size.[2]

Defendants attempt to justify their assumption of a 100% violation rate by relying on several older district court cases applying a 100% violation rate under the preponderance of the evidence standard. *See Muniz v. Pilot Travel*, No. CIV. S-07-0325 FCD EFB, 2007 U.S. Dist. LEXIS 31515, 2007 WL 1302504, at *4 (E.D. Cal. April 30, 2007) (100% § 226 violation rate proper under preponderance standard where plaintiff broadly pled pay stub violations without alleging facts to narrow the putative class or violation rate); *Bryant v. Serv. Corp. Int'l*, 2008 U.S. Dist. LEXIS 120174, at *11-12 (N.D. Cal. May 7, 2008) (applying preponderance standard and approving of defendant's use of maximum penalties under Section 226 and 30 days of averaged wages for waiting time penalties); *Quiroz v. Mistras Group, Inc.*, 2010 U.S. Dist. LEXIS 58046, at *5 (C.D. Cal. May 21, 2010) (approving of defendant's use of maximum § 226 penalties under preponderance standard); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141 (C.D. Cal. 2010) (100% waiting time penalties appropriate where plaintiff did not plead facts limiting violations").

However, since these cases were decided, decisions from the Ninth Circuit and the Eastern District of California squarely address the issue of maximum violation rates. In *Garibay v. Archstone*

---

[2] Calculated another way: (at least 2,100 paychecks x $50 first time violation) + (at least 2,100 paychecks x $100 subsequent violation rate x 26 subsequent pay periods) = $5,565,000.00

7

1  *Communities LLC,* released the same day as *Rodriguez*, the Ninth Circuit disavowed the use of a 100%
2  violation rate.  2013 U.S. App. LEXIS 17923, 2013 WL 4517934 (9th Cir. 2013).  Similarly, recent
3  Eastern District precedent has rejected the unsupported use of 100% maximum violation rates.  *See*
4  *Weston v. Helmerich & Payne Int'l Drilling Co.*, 2013 U.S. Dist. LEXIS 132930, *6 (E.D. Cal. Sept.
5  16, 2013) (defendant failed "to provide any facts supporting the calculations based upon 100%
6  violations, [and therefore] defendant has failed to carry the burden to demonstrate by a preponderance
7  of the evidence that the amount of damages in controversy exceeds $5,000,000").  In *Garibay*, the
8  Plaintiff alleged violations of Cal. Labor Code § 226 for wage statement violations.  Defendant
9  Archstone's calculations assumed that every single member of the class would be entitled to recover
10 penalties for every single pay period. Plaintiff also alleged violations of Cal. Labor Code § 203 for
11 waiting time penalties.  Archstone assumed that each employee would be entitled to the maximum
12 statutory penalty, but provided no evidence supporting that assertion. *Garibay*, 2013 U.S. App. LEXIS
13 17923, 2013 WL 4517934 at *1.

14      *Garibay* observed the only support for the Defendants' calculation of the amount in
15 controversy was "a declaration by their supervisor of payroll, which set[] forth only the number of
16 employees during the relevant period, the number of pay periods, and general information about
17 hourly employee wages." *Garibay*, 2013 U.S. App. LEXIS 17923, 2013 WL 4517934 at *1. The Court
18 rejected this evidence and explained that beyond the information in the declaration, "the defendants
19 rely on speculative and self-serving assumptions about key unknown variables."  *Id.*   The Ninth
20 Circuit affirmed and held that the district court correctly concluded that Defendant's evidence was
21 insufficient to support removal jurisdiction under CAFA.

22      In *Weston*, Plaintiff alleged six wage and hour violations, including wage statement violations
23 under Cal. Labor Code § 226.   *Weston*, 2013 U.S. Dist. LEXIS 132930, *3. Supporting a calculation
24 using maximum violations rates, Defendants provided declarations setting forth the number of putative
25 class members, the average number of work weeks during the class period, and the average hourly
26 wage of the employees. *Id.* at *16.  The Court found Defendants' declaration amounted to insufficient
27 evidence to justify the use of maximum violation rates.   The Court rejected Defendants' use of
28 maximum violation rates, concluding that there are methods of determining a reasoned basis for

8

calculations such as random sampling and using actual numbers instead of mere assumptions. *Id.* at 17-18.

Just as in *Garibay* and *Weston*, here, the only evidence Defendants provided at removal is a declaration of Defendants' Senior Resources Generalist, Michelle Bassler, describing the number of employees in each putative class, and their associated average hourly wage. Bassler Decl. ¶ 3-6. Based on that information, Defendants calculate the amount of pay periods and pay checks issued in a given year. Defendants conclude that because Plaintiffs allege that all class members were not provided with complete and accurate wage statements, Defendants are entitled to assume the maximum statutory penalty applies. (Doc. 29). This, however, is an improper assumption. Defendants' conclusory assumption of a maximum penalty is based on the same unsupported evidence rejected in both *Garibay* and *Weston.* Defendants cannot, as they have done, "assume[] that each employee would be entitled to the maximum statutory penalty" without providing "evidence supporting that assertion." *Garibay*, 2013 U.S. App. LEXIS 17923, at *1; *see also Kogok v. T-Mobile USA, Inc.*, No. 13-cv-838 BEN (BLM), 2013 U.S. Dist. LEXIS 149030, 2013 WL 5679021, at *5 (S.D. Cal. Oct. 15, 2013) ([Defendant] has not presented any evidence that [a 100% violation rate] is an accurate assumption, nor does such an allegation appear in the FAC. Accordingly, [defendant] has not established by a preponderance of the evidence that over $5 million is in controversy . . . .")

Here, Defendants merely speculate that each class member suffered a wage statement violation during each and every pay period throughout the year. A declaration stating the class size and the number of pay checks issued during the years prior to this action, together with assumptions as to erroneous payments for each and every employee, is not sufficient to establish that the amount in controversy exceeds $5,000,000 even under the preponderance of the evidence standard. *See, e.g., Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1127 (C.D. Cal. 2010) ("When applying the preponderance of the evidence standard to California Labor Code claims, many California district courts have refused to credit damage calculations based on variables not clearly suggested by the complaint or supported by evidence, concluding that the calculations are mere conjecture."). Therefore, the Court concludes Defendants have not provided sufficient evidence to establish that it is more likely than not that the 100% violation rate assumption is appropriate. The Court cannot rely on

Defendants' $5,565,000 figure for wage statement violations to prove CAFA jurisdiction and as a result, the Court discards, as speculative, this figure in its entirety for purposes of calculating the amount in controversy.

### 2. California Labor Code § 203 Claim (Waiting Time Penalties)

Similarly, Defendants' assumption of the maximum wage penalty (30 days) for waiting time violations is impermissible and must be rejected by this Court. Plaintiffs' fifth cause of action alleges that Defendants willfully failed to pay members of the proposed class—who were previously employed by Defendants but who quit or were terminated—all wages due within 72 hours of their separation. Compl., ¶ 82. Under Section 203 of the California Labor Code, such a violation results in a penalty of one full day's wages for each day that the unpaid wages remain outstanding, with a limit of 30 days. *See* CAL. LAB. CODE § 203 ("If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

Relying on Ms. Bassler's declaration, which states that 815 putative class members have separated from employment with Defendants during the statutory period, Defendants calculate that the amount in controversy for this claim is $3,325,200.00.[3] Defendants reach this amount by assuming that the maximum penalty of eight hours per day for thirty days applies to Plaintiffs' case. (Doc. 9 at 15). Furthermore, Defendants' calculations assume that every employee who ceased employment was 1) owed unpaid wages at the time of separation and 2) did not receive the unpaid wages within thirty days of separation.

Again, the Ninth Circuit and Courts in this district have recently rejected Defendants' assumption of the maximum wage penalty (30 days) for waiting time violations as unsupported by the proper evidence. *Garibay*, 2013 U.S. App. LEXIS 17923, at *1; *Weston,* 2013 U.S. Dist. LEXIS 132930, at *18. Defendants' assumption that each employee is entitled to recover the full thirty-day

---

[3] (815 former employees x 8 hours x 30 days x $17.00 average wage).

maximum penalty has no basis in the allegations of the Complaint or the proof submitted by Defendants. Plaintiffs' complaint alleges that class members may be entitled to penalties for "up to" the thirty day maximum, not that each class member is entitled to the maximum penalty for all thirty days.

Additionally, other courts applying the preponderance of evidence standard have declined to apply the maximum waiting time penalties. *Compare Andersen v. Schwan Food Co.*, No. 13-2362-PJH, 2013 U.S. Dist. LEXIS 109159, *16 (N.D. Cal. Aug. 2, 2013) (rejecting a 100% violation rate for waiting time penalties under the preponderance standard); *Roth*, 799 F. Supp. 2d at 1122-1123 ("[T]he calculation [for waiting time penalties] assumes that amounts owed are not paid for a full thirty days after termination, and that all employees worked full-time rather than part-time. Once again, defendants adduce no evidence supporting these assumptions") *with Altamirano v. Shaw Indus.*, 2013 U.S. Dist. LEXIS 84236 (N.D. Cal. June 14, 2013) (the Northern District found it reasonable to assume that each class member leaving employment would have experienced at least one incident resulting in underpayment during the course of employment where Plaintiff alleged Defendants engaged in illegal time shaving or rounding practices).

The Court finds that *Altamirano* is distinguishable here. In *Altamirano*, Defendants provided "summary-judgment type evidence" of a routine time shaving policy and practice. *Id*. at *5. Before ruling on the motion to remand, the Court "requested additional information relevant to the calculation of damages." *Id.* at *6. After finding that Defendants' calculations were supported by evidence, the Court stated that Plaintiff's allegations of a time shaving policy applied to all putative class members. Specifically, "[g]iven Plaintiff's allegations about the uniformity of the time rounding policy and the pervasiveness of the denial of a second meal break on 10 hour shifts it is reasonable to assume that each employee leaving employment would have experienced at least one incident resulting in underpayment during the course of their employment." *Id.* at * 34.

Here, Defendants' assumption that every employee suffered a wage violation entitling them to penalties for the entire 30 pay period is not accompanied with supporting evidence establishing that the maximum penalty should apply to each class member. While Defendants are not required to submit evidence to support CAFA jurisdictional requirements, the court will reject Defendants'

calculations as speculative and conclusory if, in light of the lack of evidence presented, Plaintiffs' complaint provides no basis for the assumptions made. *Anderson*, 2013 U.S. Dist. LEXIS 109159, at *7. Accordingly, because Defendants' unsupported assumptions result in a speculative damages estimate, the Court declines to include any amount of "waiting time" penalties in determining the total amount in controversy in this action.

### 3. Civil Penalties ("PAGA")

Plaintiffs seek to recover penalties under The Private Attorneys General Act of 2004 ("PAGA"). CAL. LAB. CODE § 2699. Pursuant to PAGA, an "aggrieved employee" may bring a civil action personally and on behalf of other current, or former, employees to recover civil penalties for violations of the California Labor Code. CAL. LAB. CODE § 2699(a). PAGA defines an "aggrieved employee" as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." *Id.* § 2699(c). Seventy-five percent of the civil penalties recovered go to the Labor and Workforce Development Agency, leaving the remaining twenty-five percent for the "aggrieved employees." *Id.* § 2699(i). PAGA penalties are $100 for each initial violation and $200 for each subsequent violation. CAL. LAB. CODE § 2699(f)(2). Defendants issued approximately 2,100 paychecks during the period covered by PAGA. Defendants assume that there was one PAGA violation present for each employee during each pay period. Thus, Defendants calculated the PAGA penalties as follows: ($100 initial violation penalty x 2,100 paychecks) + ($200 subsequent violation penalty x 25 remaining pay periods x 2,100 paychecks per pay period) equals $10,710,000.

With regard to the PAGA penalties, Defendants' calculations are problematic for two reasons. First, Defendants again put forth no evidence in support of their assertion that each putative class member is entitled to maximum PAGA penalties. Defendants do not attempt to make a conservative calculation of the PAGA damages at issue but again assume that every class member is entitled to penalties for every pay period throughout the year.[4] While some cases allow Defendants to assume

---

[4] Without providing any calculations, Defendants argue that even if Plaintiffs had alleged only a 50% violation rate, then for just one of the fifteen labor code violations alleged, the amount in controversy exceeds the jurisdictional threshold. (Doc. 9 at 22). Defendants' statement is incorrect. The entire amount of PAGA penalties should not be included when

12

maximum penalties, such an assumption must be supported directly by, or reasonably inferred from, the allegations in the complaint. See *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (removing defendant met CAFA's amount in controversy where its calculations "were relatively conservative, made in good faith, and based on evidence wherever possible"). As discussed above, the Court cannot credit Defendants' baseless assumption that every employee suffered at least one violation every pay period throughout the entire year. Defendants do not meet the preponderance of the evidence burden by merely assuming maximum damages without providing supporting evidence.

Second, Defendants assume that the total PAGA recovery should be considered in determining the amount in controversy. To the contrary, the statute provides that 75% of the recovery must go to the Labor and Workforce Development Agency ("LWDA"), leaving only 25% for "aggrieved employees." *See* CAL. LAB. Code § 2699(i) ("[C]ivil penalties recovered by aggrieved employees shall be distributed as follows: 75 percent to the Labor and Workforce Development Agency for enforcement of labor laws and education of employers and employees about their rights and responsibilities under this code, to be continuously appropriated to supplement and not supplant the funding to the agency for those purposes; and 25 percent to the aggrieved employees").

District courts in California are split over the question of whether the full amount of PAGA penalties sought from a defendant should be included when calculating the amount in controversy or only the 25% that would ultimately be paid to the aggrieved employee in a CAFA case. *Compare Pagel v. Dairy Farmers of Am., Inc.*, 2013 U.S. Dist. LEXIS 176273 (C.D. Cal. Dec. 11, 2013) (holding that the full PAGA penalty amount should be considered when calculating the amount in controversy in CAFA cases) *with Main v. Dolgen Cal.*, LLC, 2013 U.S. Dist. LEXIS 154551 (E.D. Cal. Oct. 24, 2013) (concluding that the Ninth Circuit precedent dictates that Defendants must reduce their PAGA penalty calculation to reflect the 75% paid to the state). Consistent with Eastern District precedent, this Court holds that the 75% of PAGA penalties paid to the state should not be included in the amount in controversy calculation. *See Main*, 2013 U.S. Dist 154551, at *7. The Court thus rejects Defendants' PAGA calculations to reach the $5,000,000 jurisdictional threshold.

---

calculating the jurisdictional amount in controversy, and therefore a 50% violation rate, standing alone, would not trigger CAFA's jurisdictional minimum. *See Urbino v. Orkin Servs. of Cal., Inc*., 726 F.3d 1118 (9th Cir. 2013).

The amount in controversy provided by Defendants relies on speculation and unsupported assumptions. While defendants cannot be expected to try the case in order to establish jurisdiction, the burden should not be improperly shifted to Plaintiffs nor should the strong presumption against removal jurisdiction be ignored. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (there is a "strong presumption" against removal jurisdiction).  Accordingly, the Court finds that Defendants have not demonstrated by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.

**CONCLUSION**

For the reasons stated, the Court RECOMMENDS that Plaintiff's Motion to Remand should be GRANTED.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304. Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 11, 2014**            /s/ *Barbara A. McAuliffe*
                                          UNITED STATES MAGISTRATE JUDGE