UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOROTHEA EMMONS and LISA STAPLETON, individually, and on behalf of other members of the general public similarly situated, and as aggrieved employees,<br><br>Plaintiffs,<br><br>v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., a Delaware corporation; QUEST DIAGNOSTICS INCORPORATED, doing business as QUEST DIAGNOSTICS INCORPORATED OF NEVADA, a Nevada corporation; QUEST DIAGNOSTICS NOCHOLS INSTITUTE, a California corporation; DOES 1 through 10, inclusive,<br><br>Defendants. | No. 1:13-cv-00474-DAD-BAM<br><br>ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>(Doc. No. 74) |

On May 16, 2016, Dorothea Emmons and Lisa Stapleton ("plaintiffs") filed a motion for preliminary approval of a class action settlement. (Doc. No. 74.) The court held a hearing on the motion on June 21, 2016. (Doc. No. 80.) Attorneys Bevin Pike and Eduardo Santes appeared telephonically on behalf of plaintiffs and attorney Aimee Mackay appeared telephonically on behalf of defendants. For the reasons discussed below, the court grants the motion.

/////

1

## I. Introduction

This action was removed from Stanislaus County Superior Court under the Class Action Fairness Act ("CAFA") on April 1, 2013. (Doc. No. 1.) The complaint alleges Quest Diagnostics Clinical Laboratories, Inc., Quest Diagnostics Incorporated, and Quest Diagnostics Nochols Institute ("defendants") violated California labor law by failing to (1) pay overtime wages, (2) pay minimum wages, (3) provide meal periods, (4) provide rest breaks, (5) pay all wages owed upon termination, (6) provide accurate wage statements, and (7) pay business-related expenses. Plaintiffs further allege violations of California Labor Code § 2698 and California Business and Professions Code § 17200. (*Id.* at 24–37.) Plaintiffs sought relief both on their own behalf and on behalf of a proposed main class and two proposed subclasses consisting of non-Floater and Floater Phlebotomists employed by defendants. (*Id.* at 16–17.)

On May 16, 2016, plaintiffs filed the current motion seeking preliminary approval of a class action settlement. (Doc. No. 74.) The proposed settlement defines the class as "[a]ll persons who worked as 'Floater' or 'Non-Floater' Phlebotomists for Defendants in California at any time during the period from April 29, 2011 to the date of Preliminary Approval." (*Id.* at 9.)

The proposed settlement seeks a gross settlement amount of $2,350,000.00. After deducting the requested attorney's fees and costs, settlement administration costs, payment to the California Labor and Workforce Development Agency ("LWDA"), and the class representative enhancement payments, the class members will net $1,495,667.00. (*Id.*) Plaintiffs estimate each class member will receive approximately $575.00. (*Id.* at 10.)

In the motion, plaintiffs and the putative class seek an order: (1) granting preliminary approval of the proposed class action settlement; (2) conditionally certifying the settlement class; (3) approving distribution of notice to the settlement class; (4) approving plaintiffs as class representatives; (5) approving Capstone Law APC as class counsel; (6) approving Simpluris, Inc. as class administrator; and (7) setting a hearing date for final approval of the settlement.

## II. Legal Standard

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935,

946 (9th Cir. 2011) (citation and internal quotations omitted). To protect the rights of absent class members, Rule 23(e) of the Federal Rules of Civil Procedure requires the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946. However, it has been recognized when parties seek approval of a settlement agreement negotiated *prior* to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Bluetooth*, 654 F.3d at 946. Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than what is normally required under the Federal Rules. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Bluetooth*, 654 F.3d at 946.

When parties seek class certification for settlement purposes only, Rule 23 "demand[s] undiluted, even heightened, attention" to the requirements for certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The district court must examine the propriety of certification under Rule 23 both at this preliminary stage and at a later fairness hearing. *See, e.g., Ogbuehi v. Comcast*, No. 2:13-cv-00672-KJM-KJN (E.D. Cal. Oct. 2, 2014); *West v. Circle K Stores, Inc.*, No. 04-cv-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).

Review of a proposed class action settlement ordinarily proceeds in three stages. *See* Manual for Complex Litigation (4th) § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers conditional class certification. *Id.* Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.*; *see also Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

**III.   Conditional Certification**

Plaintiffs request conditional certification of the settlement class under Rule 23(c)(1). The parties ask the court to certify the following settlement class:

/////

> All persons who worked as "Floater" or "Non-Floater" Phlebotomists for Defendants in California at any time during the period from April 29, 2011 to the date of Preliminary Approval.

(Doc. No. 74 at 9.)

Rule 23(c)(1) permits a court to "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000). Conditional certification requires satisfaction of the pre-requisites of Rule 23(a) and (b). *Id.*

   a. *Rule 23(a) Requirements*

Federal Rule of Civil Procedure 23(a) states in pertinent part that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." As a threshold matter, in order to certify a class, a court must be satisfied that:

> (1) the class is so numerous that joinder of all members is impracticable (the "numerosity" requirement); (2) there are questions of law or fact common to the class (the "commonality" requirement); (3) the claims or defenses of representative parties are typical of the claims or defenses of the class (the "typicality" requirement); and (4) the representative parties will fairly and adequately protect the interests of the class (the "adequacy of representation" requirement).

*In re Itel Secs. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981) (citing Fed. R. Civ. P. 23(a)).

   i. *Numerosity*

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).

The parties stipulate there are 2,600 potential class members. (Doc. No. 74 at 14.) Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members. *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998). Numerosity is also satisfied where joining all class members would serve only to impose financial burdens and clog the court's docket. *In re Itel Litig.*, 89 F.R.D. at 112. Here, the joinder of approximately 2,600

current and former, floater and non-floater phlebotomists to hear their several claims would only further clog this court's already overburdened docket.  Numerosity is thus satisfied.

        ii. *Commonality*

  Rule 23(a) also demands "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The rule does not require all questions of law or fact be common to every single class member.  The raising of any common question, however, does not suffice.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) ("[a]ny competently crafted class complaint literally raises common 'questions.'") (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–132 (2009)); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("In other words, Plaintiffs must have a common question that will connect many individual promotional decisions to their claim for class relief.")  Rather, class representatives must demonstrate common points of facts and law will drive or resolve the litigation.  *Dukes*, 564 U.S. at 350 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.") (internal citations omitted).  To satisfy Rule 23(a)'s commonality requirement, a class claim "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

  Here, plaintiffs present common questions ripe for common answers to the central issues.  These questions include: whether defendants' written rest period policy violated Industrial Welfare Commission ("IWC") Wage Order No. 5; whether defendants' practice of understaffing its facilities caused class members to miss meal or rest periods; whether defendants failed to pay premiums when class members were forced to skip meal or rest periods; whether defendants maintained a company policy requiring class members to work off the clock; whether defendants failed to provide wage statements in compliance with California law; and whether defendants had a policy of not properly reimbursing class members for business expenses.  *See Palacios v. Penny Newman Grain*, No. 1:14-cv-01804, 2015 WL 4078135, at *4 (E.D. Cal. July 6, 2015) (finding

commonality satisfied on similar grounds); *also Clesceri v. Beach City Investigations & Protective Services, Inc.*, No. CV-10-3873-JST (RZx), 2011 WL 320998, at *5 (C.D. Cal. Jan. 27, 2011) (same). Accordingly, the court finds commonality to be satisfied for the purpose of conditional class certification. However, the court also expects further evidence in the form of declarations and affidavits will be submitted prior to the fairness hearing on this issue.

### iii. *Typicality*

Rule 23(a)(3) demands "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Typicality is satisfied if the representative's claims arise from the same course of conduct as the class claims and are based on the same legal theory. *See, e.g., Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). Under the rule's "permissive standards," representative claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, because plaintiffs held the same positions as class members and were, ostensibly, subjected to the same policies and practices, typicality is satisfied.

### iv. *Adequacy of Representation*

The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). The adequacy requirement is satisfied here because plaintiffs have overlapping interests with the class members and have asserted they will vigorously pursue the action; there are no apparent conflicts between plaintiffs' claims and the class members' claims; and plaintiffs are represented by experienced and competent counsel. However, while plaintiffs have made these assertions in their moving papers, they have not attached any declarations stating such. The court expects to receive these declarations prior to the

6

fairness hearings.

        b. *Rule 23(b)(3)*

Once the threshold requirements of Rule 23(a) are satisfied, a class may be certified if the class action satisfies the predominance and superiority requirements of Rule 23(b)(3). *See Amchem*, 521 U.S. at 615 ("To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'")

          i. *Predominance*

First, the common questions must "predominate" over any individual questions. While this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022 (9th Cir. 1998). While Rule 23(a)(2) can be satisfied by even a single question, Rule 23(b)(3) requires convincing proof the common questions "predominate." *Amchem*, 521 U.S. at 623–24; *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Here, the major issues concern pay, rest/meal period, and wage statement policies defendants universally applied to all class members. Class actions in which a defendants' uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3). *See Palacios*, 2015 WL 4078135, at *5–6; *also Clesceri*, 2011 WL 320998, at *7. At this stage, the predominance requirement has been met.

          ii. *Superiority*

Rule 23(b)(3) also requires a court to find "a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As the district court in *Palacios* summarized:

/////

> In resolving the Rule 23(b)(3) superiority inquiry, the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating in one forum, and potential difficulties in managing the class action—although the last two considerations are not relevant in the settlement context.

2015 WL 4078135, at *6 (citing *Schiller v. David's Bridal Inc.*, No. 10-0616, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012). Here, the individual amount to be recovered by each class member would be dwarfed by litigation costs. Also, neither party has pointed to the existence of conflicting litigation. Superiority is satisfied.

**IV.   Preliminary Fairness Determination**

In reviewing the parties' settlement, although it is not a court's province to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute," a court should weigh the strength of a plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the stage of the proceedings; and the value of the settlement offer. *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). The court should also watch for collusion between class counsel and defendants. *Id*.

Preliminary approval of a settlement and notice to the proposed class is appropriate: "[i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval . . . ." *In re Tableware Antitrust Litigation*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

    a.   *The Settlement Is the Product of Informed, Arm's Length Negotiations*

The settlement was reached after informed, arm's length negotiations between the parties. The parties engaged in both formal and informal discovery, including an exchange and review of defendants' policies and a sample of employee time and wage records. (Doc. No. 74 at 12.) Plaintiffs' counsel also interviewed numerous potential class members. (*Id*.) Furthermore, the parties participated in mediation with an impartial mediator, Barry Winograd. (*Id*. at 13.) Based on this information, and a lack of any sign of collusion based on the current record, the court

finds the parties have sufficiently shown the settlement was the product of informed, arm's length negotiations deserving of preliminary approval. *See Palacios*, 2015 WL 4078135, at *8 (noting "the [c]ourt need not perform a full fairness analysis at this time because it will be done in connection with the [final] fairness hearing.") (quoting *Nieves v. Cmty. Choice Health Plan of Westchester, Inc.*, No. 08-321, 2012 WL 857891, at *5 (S.D.N.Y. Feb. 24, 2012)).

### b. *The Proposed Settlement Has No "Obvious Deficiencies"*

The settlement provides for a gross payment of $2,350,000.00 to 2,600 potential class members. (Doc. No. 74-1 at 21, 24.) Class members will net $1,495,667.00 after attorney's fees, litigation costs, settlement administration costs, LWDA payments, and class representative enhancement payments are deducted. (*Id.* at 21–22.) On average, each class member will receive $575.00. (Doc. No. 74 at 14.) The court regards this average payment as a good result, especially in light of other approved settlements in which class members received a third to a tenth of this amount. *See Schiller*, 2012 WL 2117001, at *17 (approving $198.70 average payment and providing examples in which average payment ranged from $57 to $98). Settlement shares will be proportional to the gross wages earned by each class member during the class period. (Doc. No. 74-1 at 29.) Unclaimed funds are to be distributed to class members on a proportional basis. (*Id.*) Funds from settlement checks not cashed will be given to the California Department of Industrial Relations Unpaid Wage Fund. (*Id.* at 34.)

### i. *Attorney's Fees*

When a negotiated class action settlement includes an award of attorney's fees, the fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). *See also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999). Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the district court must assume a fiduciary

role for the class members in evaluating a request for an award of attorney fees from the common fund. *Id.*; *Rodriquez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

Class counsel seeks attorney's fees in the amount of $783,333, or 33 percent of the gross settlement award. This number is on the high end of appropriate attorney's fees awards. *See Morales v. Stevco, Inc.*, No. 1:09-cv-00704, 2011 WL 5511767 AWI JLT, at *12 (E.D. Cal. Nov. 10, 2011) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.") (quoting *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). Furthermore, the court is also concerned with the "clear sailing" provision of the agreement. *See Palacios*, 2015 WL 4078135, at *9 (expressing same reservations) (citing *Bluetooth*, 654 F.3d at 942, 947). According to the settlement, defendants agree not to challenge plaintiffs' request for attorney's fees. (Doc. No. 74-1 at 19.) While the court grants preliminary approval, class counsel cannot rely solely on defendants' acquiescence and must, for purposes of final approval, provide proof that attorney's fees in the amount of 33 percent of the gross settlement are "reasonable and proportionate to the work performed." *Clesceri*, 2011 WL 320998, at *10 (citing *Murillo v. Pac. Gas & Elec. Co.*, No. CIV. 2:08-1974 WBS GGH, 2010 WL 2889728, at *7 (E.D. Cal. July 21, 2010)).

ii. *Class Representative Payment*

The settlement provides for payments of $8,000.00 to the class representatives. "Incentive awards are fairly typical in class action cases." *Rodriquez*, 563 F.3d at 958–59. However, the decision to approve such an award is a matter within the court's discretion. *In re Mego*, 213 F.3d at 463. Generally speaking, incentive awards are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general." *Rodriquez*, 564 F.3d at 958–59. The Ninth Circuit has emphasized "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . . [C]oncerns over potential conflicts may be especially pressing where, as here, the proposed service fees greatly exceed the payments to absent class members." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation

marks and citations omitted). A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). Incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant "reputational risk" by bringing suit against their former employers. *Rodriquez*, 563 F.3d at 958–59.

Plaintiffs request for incentive payments of $8,000.00 to each class representative falls within the typical range of such payments. *See Vasquez*, 670 F. Supp. 2d at 1125 (approving payments of $5,000.00 to each class representative). Additionally, by challenging the wage and hour policies of their former employer, plaintiffs are exposing themselves to significant reputational harm. However, plaintiffs submit no evidence concerning the services they rendered to the class. Thus, the court will grant preliminary approval to the incentive payments with the expectation that plaintiffs will provide the necessary documentation come the final hearing. This should include detailed declarations describing their current employment status, any risks they faced as a class representative, specific activities they performed as a class representative, and the amount of time they spent on each activity.

      iii. *Cost of Administration and PAGA Penalty Payment*

Likewise, the court finds the expected cost of administration of the settlement and the PAGA penalty payment to be reasonable.

    c. *The Settlement Falls Well Within the Range of Possible Approval*

To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware*, 484 F. Supp. 2d at 1080. The settlement confers a substantial benefit on class members, while proceeding with litigation imposes significant risks.

Plaintiffs' counsel claims it engaged in a significant review of information provided by defendants and class members, and believes the settlement is fair, adequate, and reasonable in

light of the information it uncovered. (Doc. No. 74 at 26–27.) Plaintiffs point to a slew of cases as evidence that wage and hour cases are often denied certification on the ground individual issues predominate over common issues. (*Id*. at 28.) Furthermore, this case has been active since 2013, and continued litigation will further delay any relief received by class members. Based on the potential uncertainty facing plaintiffs and the class members, as well as the amount of time already invested in the matter, the court finds the proposed settlement to be fair, reasonable, and adequate and is in the best interests of the class members.

        d. *The Claim Form's Release Is Proper and Not Overly Broad*

As part of the settlement, "[p]laintiff[s] and the Settlement Class Members who do not timely submit a valid request for exclusion fully and forever release the Released Parties from the Released Claims for the Class Period." (Doc. No. 74-1 at 26.) "Released Parties" is defined as:

> Defendants . . . [including] their past or present officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, insurers and reinsurers, their company-sponsored employee benefit plans, and their respective successors and predecessors in interest, subsidiaries, affiliates, parents and attorneys, if any.

(*Id*. at 23.) "Released claims" is defined as:

> [A]ll claims, rights, demands, liabilities, and causes of action of any kind arising at any time or from anything occurring during the Class Period and relating to any of the allegations set forth in the operative complaint in the Action, or based on the same set of operative facts alleged therein, including any and all state or federal wage and hour claims, either under the Fair Labor Standards Act ("FLSA") or otherwise, that were or could have been asserted in the operative complaint based on Defendants' alleged failure to provide meal and rest breaks or compensation in lieu thereof, failure to pay minimum wages or overtime for all hours worked, failure to timely pay all wages due upon termination/separation from employment, failure to provide accurate wage statements, and/or failure to reimburse for business related expenses, and any related claims for penalties, interest, or attorneys' fees, including any claims for any alleged unfair business practices under the California Business and Professions Code § 17200 et seq., and for any penalties under the Private Attorneys' General Act relating to these claims. Additionally, any Class Member who does not opt-out (and who, in so doing, becomes a Participating Class Member), and who cashes

> his or her settlement check, will be deemed to have opted into the action for purposes of the FLSA. Non-wage and hour claims, including but not limited to civil rights and tort claims and wage and hour claims beyond those within the scope of the release above, are not included in the release.

(*Id*.) These released claims appropriately track the breadth of plaintiffs' allegations in this action and the settlement does not release unrelated claims that class members may have against defendants. *Cf. Bond v. Ferguson Enter., Inc.*, No. 1:09-cv-01662-OWW-MJS, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011) ("This form of release is overbroad by arguably releasing all unrelated claims up to the date of the Agreement.").

      e. *Collusion*

There is no evidence of collusion in this case. Furthermore, the court notes the parties participated in a full day of mediation before arriving at the settlement agreement.

**V.    Proposed Class Notice and Administration**

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 561 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

The proposed notice and the manner of notice agreed upon by the parties in this case is "the best notice practicable," as required under Rule 23(c)(2)(B). Within twenty days of the court granting preliminary approval of the settlement, defendants will provide the settlement administrator with a list of all class members that will identify each class member's full name, most recent mailing address and telephone number, social security number, dates of employment, and gross wages earned during the class period. (Doc. No. 74-1 at 19–20). The settlement administrator will mail a notice packet to all class members via First-Class U.S. Mail. (*Id*. at 20.) Prior to mailing, the settlement administrator will perform a search based on the National Change of Address Database to update and correct for any known or identifiable address changes. (*Id*. at

13

21.) The settlement administrator will re-send returned packets to the forwarding addresses affixed to the returned packets. (*Id*.) If no forwarding address is provided, the settlement administrator will attempt to determine the correct address using a skip-trace. (*Id*.) Class members will have 45 days from the date of mailing to postmark objections or to opt out. (*Id*. at 24.)

The class notice adequately informs class members of the nature of the litigation, the essential terms of the settlement, and how to make a claim under the settlement, object to the settlement, or elect not to participate in the settlement. Additionally, the class notice identifies class counsel, provides their contact information, and specifies the amounts of the class representative and PAGA payments, class counsel attorney's fees and cost, and the expense of the class administrator. (Doc. No. 74-1 at 47–52.)

The claim form does not require any action from class members to participate in the settlement. (*Id*. at 49.) However, it also provides instructions on how class members can opt out and how class members can object to the proposed settlement, including the amount to which they are entitled. (*Id*.) Defendants' employment records will be presumed determinative, but class members will be provided the opportunity to present their own documentation to the settlement administrator. (*Id*.)

The parties have also submitted the following settlement implementation schedule:

| Date | Event |
| --- | --- |
| July 11, 2016 (or not later than 20 days after the court enters an order granting preliminary approval of the settlement). | Last day for defendants to produce the class list to the settlement administrator. |
| July 21, 2016 (or not later than 10 days after defendants produce the class list to the settlement administrator). | Last for the settlement administrator to mail the class notice to all class members. |
| August 26, 2016 (or at least 7 days prior to the response deadline). | Last day for plaintiffs to file the motion for attorneys' fees, costs, and class representative enhancement payments. |
| September 5, 2016 (or not later than 45 days after the settlement administrator mails the class notice). | Last day for class members to submit requests for exclusion or objections to the settlement. |
| September 23, 2016 | Last day for plaintiffs to file the motion for final approval of class action settlement. |

| | |
|---|---|
| October 18, 2016 | Last day for plaintiffs to file a reply (if desired) in support of the motion for final approval of class action settlement and motion for attorney's fees, costs, and class representative enhancement payments. |
| November 1, 2016 at 9:30 a.m. | Hearing on motion for final approval of class action settlement and motion for attorneys' fees, costs, and class representative enhancement payments. |

**VI.  Conclusion**

For all the reasons set forth above, the court:

1) Confirms the conditional certification of the settlement class for settlement purposes;

2) Grants preliminary approval of the class action settlement set forth in the stipulation of class action settlement and release between plaintiff and defendants;

3) Approves plaintiffs as class representatives;

4) Confirms Capstone Law APC as class counsel;

5) Approves Simpluris, Inc. as settlement administrator;

6) Approves the Notice Of Proposed Class Action Settlement and Final Approval Hearing (Doc. No. 74-1 at 47–52.)

7) Directs that notice be given to the class via First Class Mail;

8) Sets a hearing for final approval of the proposed settlement for November 1, 2016 at 9:30 a.m.; and

9) Adopts the proposed settlement implementation schedule.

IT IS SO ORDERED.

Dated:  **June 21, 2016**

UNITED STATES DISTRICT JUDGE

15